# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOHNNY RAY KENNEDY,

       Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 323741
Wayne Circuit Court
LC No. 14-001748-FC

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his conviction, after a jury trial, of first-degree murder, MCL 750.316(1)(a) (willful, deliberate, and premeditated killing). The trial court sentenced defendant to life imprisonment. We affirm.

## I. FACTUAL BACKGROUND

On November 17, 1993, a dead body was discovered in the basement of an abandoned office building in Detroit. The body was identified as Tanya Harris, and the medical examiner determined that she died by strangulation. After an investigation, the police had no leads as to who murdered Harris. In 2011, while "working on cold cases," the Detroit Police Department sent a vaginal and rectal swab taken from Harris to the Michigan State Police Crime Lab for DNA testing. After testing, it was determined that the swabs contained DNA from Harris "as well as an additional donor that was determined to be male." When the male DNA was run through the "CODIS System,"[1] it produced a match with defendant. As a result, on December 12, 2013, defendant was charged with open murder for the death of Harris. At the time that he was charged, defendant was already incarcerated in the Michigan Department of Corrections (MDOC).

## II. 180-DAY RULE

---

[1] CODIS stands for Combined DNA Index System and is a database system where DNA profiles from crime scene evidence are kept.

-1-

Defendant first argues that the prosecution failed to abide by the 180-day rule and that, as a result, he is entitled to reversal of his conviction. We disagree.

## A. STANDARD OF REVIEW

Whether the 180-day rule requires reversal of a conviction is a question of law that this Court reviews de novo. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003).

## B. ANALYSIS

The rule, codified in MCL 780.131 provides that:

Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, *the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.* The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail. [MCL 780.131(1); Emphasis added.]

MCL 780.133 governs the failure to comply with this rule, stating that:

In the event that, within the time limitation set forth in [MCL 780.131], action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

The unambiguous language of MCL 780.131(1) provides that the "MDOC must send written notice, by certified mail, *to the prosecutor* to trigger the 180-day requirement." *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013), citing MCL 780.131(1). Despite the clear statutory language, defendant argues that, although the MDOC never sent statutory notice of his incarceration to the prosecutor, the prosecutor nonetheless had actual or implied knowledge of defendant's incarceration from the MDOC's request for a warrant. Our Supreme Court, however, has determined that the trigger of the 180-day period is the time of "notice to the prosecutor" and that an attempt to set an alternate trigger based on actual or constructive knowledge is an impermissible expansion of the statute. See *People v Williams*, 475 Mich 245, 259; 716 NW2d 208 (2006). Further, the statute does not mandate that the MDOC send the notice; it only indicates that the notice triggers the 180-day requirement. See *id*. Because the MDOC never sent the notice at issue, the clock never began to run on defendant's 180 days, and

-2-

the 180-day rule was not violated. See *People v Holt*, 478 Mich 851; 731 NW2d 93 (2007) (affirming a decision of this Court which found that there was no violation of the 180-day rule where "the defendant did not establish that the Department of Corrections caused to be delivered by certified mail to the prosecuting attorney the written notice, request, and statement as required by MCL 780.131(1)."); *Rivera*, 301 Mich App at 191, 192 (finding "that the trial court erred when it granted defendant's motion on the basis of the 180-day rule" where "although MDOC sent a notice to the district court, it did not send, by certified mail, a notice to the prosecuting attorney.").

## II.  HEARSAY EVIDENCE

Next, defendant argues that the trial court erred when it (1) refused to admit Michael Williams's statement contained in Linda Hinton's police statement pursuant to MRE 804(b)(3), MRE 805, and MRE 804(b)(7), and (2) refused to admit Hinton's and Kay Russell's entire police statements pursuant to MRE 804(b)(7).  We disagree.

## A.  STANDARD OF REVIEW

A trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion.  *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).  An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes.  *Id*. A preserved error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it appears that it is more probable than not that the error was outcome determinative.  *Id*.

## B.  ANALYSIS

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c). Generally, hearsay is not admissible unless it falls under an exception provided by the rules of evidence.  MRE 802.  MRE 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

MRE 804(b)(3) provides that, when a declarant is unavailable as a witness, a statement against interest is not excluded by the hearsay rule.  A "statement against interest" is defined as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. [MRE 803(b)(3)].

In evaluating whether a statement against penal interest bears sufficient indicia of reliability to allow it to be admitted, courts must evaluate the circumstances surrounding the making of the statement as well as its content. *People v Barrera*, 451 Mich 261, 275-276; 547 NW2d 208 (1996), citing *People v Poole*, 444 Mich 151, 165; 506 NW2d 505 (1993), overruled in part on other grounds by *People v Taylor*, 482 Mich 368 (2008).

> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener. [*Poole*, 444 Mich at 165.]

MRE 804(b)(7) provides for admission of a statement that is not specifically covered by any of the other hearsay exceptions under MCR 804(b),

> . . . but [has] equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . . .

In analyzing MRE 803(24), the identical equivalent to MRE 804(b)(7),[2] our Supreme Court has explained that the following four elements must be established to admit a statement under the rule:

> (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence. [*People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003).]

The following factors are considered in determining whether statements have particularized guarantees of trustworthiness considering the totality of the circumstances:

> (1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements

---

[2] MRE 804(b)(7) is applicable when the declarant is unavailable, whereas MRE 803(24) applies to out of court statements by an available declarant.

were made. [*People v Lee*, 243 Mich App 163, 178; 622 NW2d 71 (2000) (citations omitted).]

Without a showing of a particularized guarantee of trustworthiness, a statement will be deemed presumptively unreliable and therefore inadmissible. *People v Smith*, 243 Mich App 657, 688; 625 NW2d 46 (2000).

First, defendant's argument related to "Williams' statement" is unclear. While defendant argues that "Williams' statement should have been admissible as a statement against interest under MRE 804(b)(3)," Williams's own statement to the police contains no statement that could be construed as against his interest. Instead, it seems that defendant attempts to argue that Williams's statement asking Hinton, "[D]id you hear I killed [Tanya Harris?]", which is contained in Hinton's statement to police, should have been admitted at trial. However, contrary to defendant's argument, while the entirety of Williams's and Hinton's statements to police were not admitted at trial, Williams's statement asking Hinton, "[D]id you hear I killed [Harris?]", was admitted at trial and presented to the jury through Officer Deborah Monti's testimony. During trial, Officer Monti testified that she interviewed Hinton and that Hinton told her that Williams had "*came up to her and said did you know I killed [Harris]*?" [Emphasis added.] Thus, even assuming without deciding that the trial court erred in excluding Williams's statement contained in Hinton's statement to police from being admitted at trial in its written form, defendant cannot show that it is more probable than not that the error was outcome determinative. See *King*, 297 Mich App at 480 (finding that the error in excluding proposed evidence was harmless where "that evidence was implicitly already before jury."); *McLaughlin*, 258 Mich App at 656-657 (finding that the exclusion of evidence, "if erroneous, was also harmless" where although the evidence that was admitted "was not the sort of explicit evidence defendant hoped to get before the jury, it was sufficient" to get the fact before the jury).

Second, defendant argues that "Hinton's remarks should have been admitted." In her statement to police, Hinton asserted that Williams came up to her and said, "[D]id you know I killed [Harris]?" However, again, while Hinton's written statement was excluded, Officer Monti testified that Hinton told her that Williams had "came up to her and said did you know I killed [Harris]?" Hinton's statement also asserted that Williams had previously sexually assaulted her in vacant buildings. These allegations were not admitted at trial, and defendant argues that they were admissible pursuant to MRE 804(b)(7). However, defendant has failed to demonstrate that Hinton's statement met the criteria for admission under MRE 804(b)(7). Hinton's statement to the police was arguably evidence of a material fact because it would infer that Williams, and not defendant, could have killed Harris. Arguably, it would also be more probative on the point of whether Williams killed Harris than any other evidence that the defense could procure through reasonable efforts, as both the defense and prosecution were unable to produce Williams for trial. However, to admit evidence pursuant to MRE 804(b)(7), "[t]he first and most important requirement is that the proffered statement have circumstantial guarantees of trustworthiness equivalent to those of the categorical hearsay exceptions," *Katt*, 468 Mich at 290, and without a showing of a particularized guarantee of trustworthiness, a statement is presumptively unreliable and, therefore, inadmissible, *Smith*, 243 Mich App at 688. Defendant makes no arguments regarding the trustworthiness of Hinton's statement, and Hinton's statement does not bear sufficient indicia of reliability. While it seems that Hinton's allegation regarding the sexual assault was spontaneous, the record is lacking regarding Hinton's potential bias and motive to

fabricate, or other variables relating to her reliability. Because the statement lacks any indicia of reliability, the trial court did not abuse its discretion by refusing to admit it under MRE 804(b)(7).

Third, defendant argues that the trial court erred by refusing to admit Russell's statement to police that she observed Harris with Williams the night before her death, as it was admissible under MRE 804(b)(7). However, again, while Russell's entire written statement was not admitted at trial, police officers testified to its substance. In fact, Officer Vernon Humes testified that Russell stated that she had seen Williams with Harris at 9:00 p.m. the night before Harris's body was discovered and that Williams had initially been detained as a result of that statement. Thus, again, even assuming without deciding that the trial court erred in excluding Russell's entire written statement from being admitted at trial, defendant cannot show that it is more probable than not that the error was outcome determinative. See *King*, 297 Mich App at 480 (finding that the error in excluding proposed evidence was harmless where "that evidence was implicitly already before jury."); *McLaughlin*, 258 Mich App at 657 (finding that the exclusion of evidence, "if erroneous, was also harmless" where although the evidence that was admitted "was not the sort of explicit evidence defendant hoped to get before the jury, it was sufficient" to get the fact before the jury).

In sum, while the written statements were not admitted at trial, Russell's statement placing Williams with Harris the night before her body was discovered, and Hinton's allegation that Williams asked her if she heard he had killed Harris were both presented to the jury through Officer Monti's testimony. Thus, defendant cannot show that it is more probable than not that any alleged error in excluding the statements in their written form was outcome determinative.

## III. APPOINTMENT OF A DNA EXPERT

Defendant next argues that he was denied his due process right to present a defense by the court's failure to appoint a DNA expert. US Const, Am VI; Const 1963, art 1 § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). We disagree.

## A. STANDARD OF REVIEW

A trial court's decision on a motion to appoint an expert witness is reviewed for an abuse of discretion. *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003), citing MCL 775.15. However, "[t]his Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

## B. ANALYSIS

Before trial, the defense moved for the appointment of a DNA expert to "aid the defense" because "this is a case of scientific and complex nature," and defense counsel wanted to "consult with [the expert] in his expertise analysis" given the fact that counsel was "going to get a lot of scientific evidence here[.]" The defense did not anticipate calling the expert to testify at trial and, instead, only intended to consult the expert and utilize the expert's knowledge in order to prepare for cross-examination of the prosecution's witnesses. In particular, the defense argued that a DNA expert was necessary because "a prosecution based largely or entirely upon the

presentation of identification evidence based upon DNA poses an especially technical and complex range of issues for defense counsel." Accordingly, in order to rebut the evidence presented by the prosecution, the defense argued that defense counsel must be "educated and schooled to no small extent in the science and accepted protocols of DNA extraction, preservation, testing, as well as dangers of contamination and the steps and measures taken to document a particular test, and to maintain the proper calibration of testing equipment." As such, the defense contended that appointment of an expert was necessary in order for defense counsel to "be able to confront the witnesses and to shed light on any questionable issues that may have occurred during the lengthy storage and testing procedures." The trial court held that the defense may "talk to [the expert]" and "read up on him," but the court declined to appoint an expert.

Pursuant to the Due Process Clause, "states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights." *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997), citing *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985). Fundamental fairness precludes a state from denying an indigent defendant "an adequate opportunity to present their claims fairly within the adversary system." *Id*. (quotation marks and citation omitted).

Pursuant to MCL 775.15, a trial court may appoint and pay for expert witnesses for indigent defendants. However, among other things, a defendant must "make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial[.]" MCL 775.15. "[A] trial court is not compelled to provide funds for the appointment of an expert on demand." *Tanner*, 469 Mich at 442. Rather, "to obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Id*. at 443. Stated differently, "a defendant is not entitled to a DNA expert without making a particularized showing of a need for the expert." *Leonard*, 224 Mich App at 583-584. "It is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Tanner*, 469 Mich at 443 (quotation marks and citation omitted).

In this case, the trial court did not abuse its discretion in denying defendant's motion for the appointment of a DNA expert. Defendant failed to show more than a "mere possibility" that an expert would be beneficial to the defense, as the defense did not offer, nor does the dissent offer, any indication beyond its own speculation that a DNA expert could have provided information that would have been beneficial to the defense. See *id*. Rather, defendant specifically argued that defense counsel needed additional knowledge in order to confront the witnesses regarding "*any* questionable issues that *may have* occurred during the lengthy storage and testing procedures." (Emphasis added.) Because neither the defendant nor the dissent identify any specific concerns regarding the DNA evidence in this particular case or provide any indication that the DNA evidence was flawed—and, instead, only articulate generalized concerns regarding the complex, scientific nature of the evidence—there is no basis for us to conclude that the trial court's decision constituted an abuse of discretion.

On appeal, defendant asserts that an expert could have helped him "determine the impact, if any, after an audit uncovered serious errors in numerous cases resulting in the shut-down of the Detroit Police Crime Lab" in 2008. However, the DNA testing in the case was done in 2011, well after any possible shut down of the crime lab. Moreover, defendant cites no authority in support of his proposition that such generalized concerns trigger the court's duty to provide an expert. Again, to the contrary, the mere "possibility of assistance from the requested expert" is insufficient. *Tanner*, 469 Mich at 443.

Thus, the trial court did not abuse its discretion by refusing to appoint a DNA expert. Likewise, we find no basis for concluding that defendant's constitutional rights were violated on that basis and because defendant had an adequate opportunity to present his arguments in the adversarial system, particularly through counsel's thorough cross-examination of the state's witnesses. *Leonard*, 224 Mich App at 580.

## IV. MRE 404(B) EVIDENCE

Next, defendant argues that the trial court abused its discretion in admitting, under MRE 404(b), evidence of his 1995 conviction for murdering Cynthia McGee because the evidence was not relevant and its probative value was outweighed by its unfair prejudice. As a result, defendant argues that its admission constituted "a denial of fundamental fairness," which requires reversal. We disagree.

### A. STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Murphy (On Remand)*, 282 Mich App 571, 578; 766 NW2d 303 (2009).

### B. ANALYSIS

Evidence of crimes, wrongs, or other acts is inadmissible to show a defendant's propensity to act in conformity with those acts. MRE 404(a); *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). However, MRE 404(b)(1) provides that such evidence:

> . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The prosecutor bears the burden of showing that the evidence is relevant to a proper purpose or otherwise proves a fact other than the defendant's character or criminal propensity. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).

In order for other acts evidence to be admissible, the trial court must determine (1) whether the evidence is offered for "something other than a character to conduct or propensity theory" and offered for a proper purpose under MRE 404(b), (2) whether the evidence is relevant

"to an issue of fact of consequence at trial" under MRE 401 and MRE 402, and (3) whether the probative value of the evidence is substantially outweighed by unfair prejudice under MRE 403. *People v Sabin*, 463 Mich 43, 55; 614 NW2d 888 (2000), citing *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is relevant to show a common scheme or plan when the charged crime and the prior act "are sufficiently similar to support an inference that they are manifestations of a common scheme or plan." *Sabin*, 463 Mich at 63-64. While "general similarity between the charged act and the prior bad act is not enough to show a pattern," *People v Smith*, 282 Mich App 191, 196; 772 NW2d 428 (2009), "distinctive and unusual features are not required to establish the existence of a common design or plan. The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense," *People v Hine*, 467 Mich 242, 252-53; 650 NW2d 659 (2002), citing *Sabin*, 463 Mich 65-66. However, when similar acts are being used to prove identity, "a high degree of similarity" is required between the prior conduct and the charged offense. *People v Golochowicz*, 413 Mich 298, 325; 319 NW2d 518 (1982). Specifically, there must be "special characteristics so uncommon, peculiar and distinctive as to lead compellingly to the conclusion that all were the handiwork of the defendant because all bore his distinctive style or 'touch.' " *Id*. To use prior acts to prove identity, "more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The [commonality of circumstances] must be so unusual and distinctive as to be like a signature." *Id*. at 310-311 (alteration in original).

All relevant evidence is prejudicial to some extent. *Murphy (On Remand)*, 282 Mich App at 583-583. "Unfair prejudice exists . . . where either a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, or it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 583 (quotation marks and citations omitted). Unfair prejudice also exists if the evidence "inject[s] considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (quotation marks and citation omitted).

The prosecution sustained its burden at trial in demonstrating that defendant's prior murder conviction was offered for a proper purpose under MRE 404(b). The prosecution presented details of the 1995 murder conviction of McGee to show defendant's common scheme or plan in committing the murder of Harris[3] and, although not expressly offered as such, to show the identity of Harris's perpetrator was defendant. On appeal, defendant acquiesces that the prosecution showed defendant had sex with Harris, but he continues to deny killing her. Using

---

[3] See *People v Drohan*, 264 Mich App 77, 87; 689 NW2d 750 (2004) (finding that the prosecutor introduced the prior acts evidence for a proper purpose where the "common features" where intended to show that the "defendant had a common scheme of suddenly grabbing unwilling women and seeking immediate sexual gratification from them.")

prior acts to prove identity is a proper purpose under MRE 404(b). See *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998) (finding that "the similar-acts evidence was admitted for a proper purpose, namely, to prove that defendant committed this crime."). While using prior bad acts to prove identity requires a higher level of similarity between prior crime and present conduct, McGee's murder and Harris's murder were sufficiently similar to be admitted for this purpose. Both murders occurred in the Cass Corridor, both victims were black prostitutes with drug problems, both were left nude in an abandoned building, and both were strangled to death. The same facts establish defendant's common plan or scheme to target prostitutes in the Cass Corridor for sex, engage in sexual relations with them in vacant buildings, and then strangle them. See *Ho*, 231 Mich App at 186-187 (finding the bad act was sufficiently similar to prove identity where the same caliber handgun was used in both, the same caliber shell was left at each, the locations were two miles apart, both occurred at night, and within two weeks of each other). Any error in admitting the other acts evidence to prove identity is harmless, where the evidence was also admissible for the other proper noncharacter purpose to show a common plan or scheme.

We also find that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The similarities between McGee's murder and Harris's murder make the evidence highly probative of a common scheme or plan and relevant to prove identity. Additionally, the trial court took steps to decrease the danger of unfair prejudice. The court ordered that defendant's police interview be redacted to eliminate any mention of the fact that McGee was dismembered and provided a limiting instruction. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, the trial court did not err by admitting the evidence pursuant to MRE 404(b). See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014) (finding where the similarity between the other act and the conduct at issue made the evidence highly probative of a common scheme or plan, and the trial court provided a limiting instruction, the trial court did not err by admitting the evidence pursuant to MRE 404(b)).

## V. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence presented at trial to support his conviction of first-degree premeditated murder. We disagree.

## A. STANDARD OF REVIEW

A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

## B. ANALYSIS

In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999); *People v Harverson*, 291 Mich

App 171, 175; 804 NW2d 757 (2010). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000); *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation omitted). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

In order to convict a defendant of first-degree premeditated murder, the prosecution must prove that there was an "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Premeditation is an essential element of first-degree, premeditated murder. *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). Although there is no specific time requirement, sufficient time must have elapsed to allow the defendant to take a "second look." *Id*.

Additionally, identity is an essential element in every criminal prosecution, *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008), and the identity of the defendant as the perpetrator of the crime is a fact that must be proven beyond a reasonable doubt, see *People v Davis*, 241 Mich App 697, 699-700; 617 NW2d 381 (2000). The prosecution may establish identity by circumstantial evidence and any associated reasonable inferences. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

At trial, a medical examiner testified that Harris's cause of death was strangulation. His conclusion was based on Harris's injuries, which resulted in "numerous abrasions an [sic] scrapings over the – both sides of the interior aspect of the neck" and "hemorrhage inside the muscles of the neck and . . . a fracture of one of the bones inside the neck." These facts are sufficient to show that the killing was intentional and, thus, establish the first element of first-degree murder. The medical examiner also testified that strangulation results from "20 to 30 seconds of non-interrupted compression" on the neck. Based on that amount of time, a reasonable trier of fact could infer that defendant had time to take a second look before killing. See *Johnson*, 460 Mich at 733, citing *People v Furman*, 158 Mich App 302, 308; 404 NW2d 246 (1987) (finding that "evidence of manual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' "). Additionally, Harris's body was found in an abandoned office building. A reasonable factfinder could infer that the killer left the body in the abandoned building to conceal the crime. Evidence that a defendant attempted to conceal the crime can also support a finding that the crime was premeditated. *People v Gonzalez*, 468 Mich 636, 642; 664 NW2d 159 (2003). Thus, a rational juror could conclude that Harris was killed intentionally and with premeditation.

The final element is defendant's identity as the murderer, and defendant asserts that there was no credible evidence that he was the person who killed Harris. Defendant argues that the evidence only shows that he had sex with Harris, not that he killed her. Because there was no eyewitness to the actual killing, defendant's identity as the killer was established by circumstantial evidence. However, there is sufficient evidence implicating defendant in Harris's murder, as defendant was known to frequent the neighborhood where Harris's body was discovered, defendant had an admitted history with prostitutes, and defendant's DNA was found

on Harris. Moreover, a rational trier of fact could infer from defendant's prior conviction for McGee's murder that defendant also killed Harris in a similar fashion. Although defendant argues that his DNA found on Harris is insufficient to link him to her murder, this same challenge was presented to the jury during cross-examination and closing argument. Because this Court may not interfere with the jury's role of determining issues of weight and credibility, *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992), the evidence was sufficient to support defendant's conviction of first-degree premeditated murder.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Last, defendant argues that he was denied the effective assistance of counsel. He claims that defense counsel's performance fell below an objective standard of reasonableness when he "refer[red] to defendant as a criminal during jury selection" and when he proceeded to trial without having obtained all of the discovery. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

A timely motion for a new trial, which raises the issue of ineffective assistance of counsel, preserves the issue for appellate review. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Alternatively, to preserve the issue for appeal, a criminal defendant may request a *Ginther* hearing to make a separate factual record supporting the claim of ineffective assistance of counsel. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). In this case, defendant did not move for a new trial or request a *Ginther* hearing below,[4] and as a result, this issue is not preserved. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, the trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*. Unpreserved claims of ineffective assistance of counsel can still be reviewed, but review is limited to errors apparent in the record below. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

---

[4] In his brief on appeal, defendant did request a remand for a *Ginther* hearing to explore the issues of alleged ineffective assistance of counsel. While his request is timely, MCR 7.211(C)(1)(a), defendant has not set forth, by affidavit or offer of proof, additional facts that would be established at a hearing if one was held, MCR 7.211(C)(1)(a)(ii).

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990). When claiming ineffective assistance due to defense counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990). However, counsel's strategic judgments are afforded deference. *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003).

B. ANALYSIS

Defendant argues that defense counsel was ineffective when he "refer[red] to defendant as a criminal during jury selection." We disagree.

Defendant cannot overcome the strong presumption that counsel's performance was trial strategy nor demonstrate the requisite prejudice necessary to establish a claim of ineffective assistance of counsel. Contrary to defendant's assertions, defense counsel never referred to defendant as a criminal during jury selection, or at any other point during trial. Instead, because counsel knew that the prosecution would present MRE 404(b) evidence at trial, during voir dire, defense counsel stated that if "a person has been convicted of a crime in the past [it] is irrelevant as to whether or not they committed a new crime in the present day" and that "certain evidence of a prior crime maybe [sic] used for narrow reasons." Defense counsel also stated that past crimes can never be used "for the purpose of thinking that well he committed a crime before he has to be guilty of this crime not irrespective of the evidence in this case" and that "[t]he fact of a prior act cannot be a substitute for all of the evidence in the new case." Defense counsel then asked each prospective juror if they would be able to "follow that rule" and if they could use evidence of a prior crime "only for the narrow purpose that the Judge [permits]." In sum, defense counsel did not call defendant a "criminal" during jury selection, thereby prejudicing the jury against him. Instead, defense counsel properly inquired into possible prejudice resulting from defendant's prior conviction. As a result, defendant cannot overcome the strong presumption that counsel's performance was trial strategy nor demonstrate that defense counsel was ineffective in this regard.

Defendant next argues that defense counsel was ineffective when he proceeded to trial without obtaining all of the discovery. Again, we disagree.

Again, defendant cannot establish the required showing of deficient performance necessary to establish a claim of ineffective assistance of counsel. Contrary to defendant's assertions, defense counsel's questions, remarks, and arguments throughout trial demonstrate that he was familiar with the case and prepared for trial. The record shows that there were some issues with discovery throughout the case. Defense counsel made three pretrial motions for discovery. The first was denied as overbroad, and the second became moot when defense counsel stated that he was set to receive the requested discovery that day. Defense counsel's third motion, heard approximately one week before trial was scheduled to begin, claimed that he did not receive discovery related to the forensic scientists, their laboratory error rates, or the police manual. Despite the prosecutor's refutation that defense counsel was provided with those

items, the court granted defense counsel an adjournment to obtain the information. Given these circumstances, defendant does not specify which discovery materials defense counsel lacked on the day of trial. The record demonstrates that defense counsel was not provided and had not obtained a copy of the police manual. However, this omission alone did not prejudice defendant sufficiently to show that counsel's performance fell below an objective standard of reasonableness. While the manual would have presumably been helpful during the cross-examination of both forensic scientists, defense counsel cross-examined each expert extensively, even citing scholarly articles related to error rates. Defendant's argument that counsel was ineffective for failing to conduct an independent investigation to obtain outstanding discovery materials is also without merit. Again, defendant fails to identify which materials were wanting on the day of trial. Defendant relies solely on the fact that his counsel filed a third motion for discovery a week before trial to infer that counsel was unprepared. The court's adjournment, however, gave defense counsel additional time to prepare, which defendant does not account for. In the absence of a *Ginther* hearing, this Court does not know what arsenal of discovery was at defense counsel's disposal, or his strategic reasons for its use. From the record before us, it is not apparent that counsel's alleged unpreparedness constituted a deficient performance.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan

-14-